

FILED
SOUTHERN DISTRICT OF MISSISSIPPI
JUN 10 2009
J.T. NOBLIN, CLERK
BY_____ DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

EMMA MAE SMITH                                                          PLAINTIFF

VS.                                                     CIVIL ACTION, FILE NO. 3:09cv342 WHB LRA

BOBBY LENOIR                                                            DEFENDANT

## COMPLAINT
## JURY TRIAL DEMANDED

Plaintiff, **EMMA MAE SMITH**, (hereinafter referred to as "**SMITH**") as for her Complaint against Defendant, **BOBBY LENOIR**, (hereinafter referred to as "**LENOIR**") would show unto the Court the following:

### PRELIMINARY STATEMENT

1. Stanford, and the Defendant, **LENOIR**, engaged or participated in the implementation of manipulative devices to falsely report investment returns to customers, made or participated in the making of false and misleading statements, and participated in a scheme to defraud, or a course of business that operated as a massive fraud or a deceit on its customers. Plaintiff, **SMITH'S**, claims include fraud based on misrepresentation in connection with the sale of securities in violation of the Securities Act of 1933 and the Securities Exchange Act of 1934. As a result of Stanford's and Defendant, **LENOIR'S** wrongful conduct and scheme, investors placed millions of dollars into Stanford's managed portfolios, including the purchase of "depositor-secured" Certificates of Deposit, and have sustained significant financial losses.

2. This fraud was accomplished through the direction and active participation of Defendant, **LENOIR**, who knowingly violated the Securities and Exchange Commission ("SEC")

and FINRA regulatory provisions, and federal securities law. When certain employees of Stanford complained about discrepancies in certain investment results, Stanford, through its officers and directors (including the individual Defendant), knowingly attempted to "cover up" this information, opting instead to hide and obstruct the truth, and Stanford's duty of compliance with regulatory and statutory law, and its fiduciary duty of full and fair disclosure to its customers. Defendant, **LENOIR**, knew of Stanford's "cover up" and non-compliance with these laws.

3. On or about February 17, 2009, the SEC filed its Complaint in the United States District Court, Northern District, in Dallas, Texas, Cause No. 3-09CV0298, alleging, *inter alia,* a myriad of false and misleading practices by Stanford and its individual officers and control persons, in violation of federal securities law. In response to the SEC's Application for Emergency Relief, the Honorable Reed O'Connor issues a Temporary Restraining Order enjoining further violation of federal securities law, freezing the assets of the certain Defendants, ordering the return of assets outside the United States to the jurisdiction of the federal court, and appointing a Receiver to marshal the assets of certain Defendants.

## JURISDICTION AND VENUE

4. The investments offered and sold by Stanford and Defendant, **LENOIR**, are "securities" under Section 2(1) of the Securities Act of 1933[15 U.S.C. §77b], and Section 3(a)(10) of the Securities Exchange Act of 1934[15 U.S.C. §78c].

5. This Court has jurisdiction over this action, and venue is proper, under Section 22(a) of the Securities Act of 1933[15 U.S.C. §77v(a)], and Section 27 of the Securities Exchange Act of 1934[15U.S.C. §78a].

6. Venue is proper in that a substantial part of the events giving rise to this claim,

including solicitation of Plaintiff, **SMITH**, who became a victim of Defendant, **LENOIR'S**, wrongful conduct occurred in the Southern District of Mississippi. Moreover, Defendant, **LENOIR**, has directly or indirectly, made use of the means or instruments of transportation and communication, and the means or instrumentalities of interstate commerce, or of the mails, in connection with the transactions, acts, practices, and courses of business alleged herein. A significant number of the transactions, acts, practices, and courses of business alleged herein. A significant number of the transactions, acts, practices, and courses of business occurred in Mississippi.

### PARTIES

7. Plaintiff, **EMMA MAE SMITH**, is an individual residing in Canton, Madison County, Mississippi.

8. Defendant, **BOBBY LENOIR**, a citizen of Mississippi, was an agent of Stanford, selling Stanford Services and products to various Mississippi residents. He can be served with process in accordance with the *Federal Rules of Civil Procure* at his residence, 3189 Hamplea Road, Magnolia, Mississippi..

### STATEMENT OF FACTS AND ALLEGATIONS RELEVANT TO ALL CAUSES OF ACTION

**A.** **The Organization**

9. Stanford is composed of several U.S. companies and its flagship entity, an offshore bank known as Stanford International Bank, Ltd. ("SIB"). All of these companies are controlled by R. Allen Stanford, who is either the founder, chairman, and/or chief executive officer of all related Stanford companies.

10. R. Allen Stanford, 58, is a Texas billionaire with a reported net worth, according to Forbes, of an estimated $2.2 billion, making him the 205th on Forbes 2008 list of the richest people in the U.S. worldwide. He often refers to the meager beginnings of his father's insurance business in Mexia, Texas during the Depression, but he equally touts his prominent business and political influence in the twin island Caribbean nation of Antigua and Barbuda, where he was knighted as Sir Allen in 2006, and where his Antiguan-based offshore bank is located.

11. With reported assets of $1 billion in 2001, SIB now has more than $8.5 billion in total assets, according to the bank's report in December 2008. To do so R. Allen Stanford and his key management engaged in a campaign to substantially increase SIB assets in Antigua by selling high-yield certificates of deposits to affluent U.S. investors through Stanford's network of U.S. companies. U. S. investors solicited to purchase SIB-issued CDs through his array of affiliated companies and, in particular to this litigation, by Defendant, **LENOIR.** Stanford Group Company is owned by Stanford Group Holdings, Inc., which is in turn owned by R. Allen Stanford. For all practical and legal reasons, all related companies are owned and controlled by R. Allen Stanford.

12. R. Allen Stanford has created a complex web of affiliated companies that exist and operate under the brand Stanford Financial Group ("SFG"). SFG is described as a privately held group of companies that has in excess of $50 billion "under advisement."

13. SIB, one of SFG's affiliates, is a private, offshore bank that purports to have an independent Board of Directors, an Investment Committee, a Chief Investment Officer and a team of research analysts. While SIB may be domiciled in Antigua, a small group of SFG employees who maintain offices in Memphis, Tennessee, and Tupelo, Mississippi, purportedly monitor the assets. Defendant, **LENOIR'S,** direct affiliation is with the Jackson, Mississippi office.

14. SIB, an Antiguan bank charted under the laws of the sovereign nation of Antigua and Barbuda, boasts in its promotional literature that "deposit safety" is its "number one priority." Acting in concert with Stanford's U. S. Based companies, the offshore bank taps into the lucrative U.S. investor market through the conduit of Stanford Group Companies ("SGC"), and its 29 affiliated offices throughout the U.S. In all cases, SGC aggressively pushed its advisors including **BOBBY LENOIR,** to sell the SIB CD's program and rewarded them handsomely for their success.

15. Among the platform of financial products offered by SGC, the sale of SIB CDs offered the greatest incentive to financial advisors. The campaign involved direct pressure on the financial advisors to sell the foreign CDs, coupled with bonus incentives for employees who could generate the greatest number of deposits. The program was aptly named as "The Contest." An "SIB Scoreboard" was kept, listing each group's performance in meeting their quota, which determined the size of the bonus they would receive.

16. From a 3% referral fee payable to SGC on every SIB CD sold, SGC advisers received a 1% commission if they sold $2 million of SIB CDs in quarter. They would also receive as much as a 1% trailing commission throughout the term of the CD if they maintained the $2 million per quarter production hurdle. This commission structure provided a powerful incentive for SGC financial advisors to aggressively sell CDs to the U.S. investors, and was used extensively to recruit new advisors to SGC.

17. SGC aggressively expanded its number of financial advisors in the United States. Through this expansion, SIB's network of representatives who sold CD products grew substantially. According to the Annual Report and information provided to advisors, the total assets at SIB grew exponentially from 2001 to 2008:

    1 Billion - July 2001
    2 Billion - July 2003 (2nd billion in 24 months)
    3 Billion - December 2004 (3rd Billion in 17 months)
    4 Billion - December 2005 (4th Billion in 12 months)
    5 Billion - October 2006 (5th Billion in less than 10 months)

By the end of 2007, SIB sold $6.7 billion of CDs, and in its latest report of December 2008, SIB reports over 30,000 clients, representing $8.5 billion in total assets.

    18.    Defendant, **BOBBY LENOIR,** represented the following:

- CD is liquid, minimally leveraged, and can be redeemed at any time.

- SIB is strongly capitalized with R. Allen Stanford's own personal funds, and depositor security is the number one priority.

- The SIB investment portfolio was monitored by a team of analysts and consistently generates more investment return than is paid out in CD interest and expenses so that the principal is not really ever in jeopardy.

- The SIB CDs are secure because of insurance coverage from Lloyd's and other underwriters, and excess FDIC.

- The SIB investment portfolio is overseen by a regulatory authority in Antigua, and an independent auditor who verified and audited financial statements of SIB.

    19.    These misrepresentations were false and misleading when made to customers who purchased the SIB CDs.

    20.    Plaintiff, **SMITH**, individually entrusted $500,000.00 to Stanford for investment on her behalf based upon materially false and misleading information disseminated by Defendant, **LENOIR**, to the effect that Stanford was a legitimate enterprise engaged in the lawful brokerage and sale of investment securities, with the purported rates of return on investment.

    21.    In determining to invest monies, Plaintiff, **SMITH**, naturally, reasonably, and justifiably relied upon Defendant's misrepresentations in deciding to make such investment. As a

consequence of Defendant, **LENOIR'S**, common law and statutory fraud as alleged herein, Plaintiff, **SMITH**, has been damaged in an amount to be proven at trial.

## CAUSES OF ACTION
## FIRST CLAIM

### First Claim for Relief (Violation of [10(b) of the Securities Exchange Act, Misrepresentations, negligence and Fraud)

22.     Plaintiff, **SMITH**, repeats and realleges each and every allegation contained in the foregoing paragraphs as if set forth fully herein.

23.     As more fully set forth in the factual allegations above, Defendant, **LENOIR**, through the use of the mails and the means and instrumentalities of interstate commerce, fraudulently induced Plaintiff, **SMITH**, to purchase investments, being marketed by Stanford through the use of materially false and misleading Monthly Account Statements, sales materials and oral presentations.

24.     Defendant, **LENOIR**, knowingly and/or negligently transmitted to Plaintiff, **SMITH**, and disseminated, directly and through its agents, materially false and misleading statements, as more fully described above, describing and recommending the purchase of the securities purchased by Plaintiff, **SMITH**.

25.     At the time of the misstatements and omissions described above, Defendant, **LENOIR**, knew or should have known that such statements were materially false and misleading and omitted facts required in order to make the statements made, in light of the circumstances under which they were made, not misleading, but knowingly or recklessly made such statements to Plaintiff, **SMITH**, in order to induce her to purchase the investments.

26.     Plaintiff, **SMITH**, reasonably relied upon the information provided to her and statements made by Defendant, **LENOIR**, recommending the purchase of the securities. At the time

of such investments, Plaintiff, **SMITH**, had no knowledge that the information and recommendations provided by Defendant, **LENOIR**, contained material misstatements and omissions.

27. Plaintiff, **SMITH**, would not have purchased the securities but for the materially false and misleading information provided to them by Defendant, **LENOIR**.

28. As a result of her investments, Plaintiff, **SMITH**, has been damaged and their original investment capital has been substantially depleted.

## SECOND CLAIM

### Aiding and Abetting Violations of Securities Exchange Act Section 10(b)

29. Plaintiff, **SMITH**, repeats and realleges each and every allegation contained in the foregoing paragraphs as if set forth fully herein.

30. In addition to violating the provisions of the Securities Exchange Act Section 10(b) and Rule 10b-5, Defendant, **LENOIR**, in the manner set forth above, knowingly or with severe recklessness provided substantial assistance in connection with the violations of Securities Exchange Act Section 10(b)[15 U.S.C. §78j(b)].

## THIRD CLAIM
### (Violations of Section 12 of the Securities Act)

31. Plaintiff, **SMITH**, repeats and realleges each and every allegation contained in the foregoing paragraphs as if set forth fully herein.

32. Defendant, **LENOIR**, sold the securities to Plaintiff, **SMITH**, by means of oral and written communications, which contained material misstatements and/or omissions and were disseminated by use of the means and instruments of transportation or communication in interstate

commerce of the mails.

33. Plaintiff, **SMITH**, without knowledge of the falsity of Defendant, **LENOIR'S** statements and of the material omissions in the written materials provided by Defendant, **LENOIR**, including, but not limited to, Monthly Account Statements and other misrepresentations made by Defendant, **LENOIR**, as described above, and reasonably believing such statements to be true and complete, purchased investments from Defendant, **LENOIR**.

34. Plaintiff, **SMITH**, would not have purchased the investments but for the materially false and misleading information provided to them by Defendant, **LENOIR**.

35. By virtue of the foregoing, Plaintiff, **SMITH**, has been damaged and is entitled to damages and other relief for Defendant's violations of Section 12 of the Securities Act as alleged herein.

## FOURTH CLAIM

### (Vilations of Section 17(a) of the Securities Act)

36. Plaintiff, **SMITH**, repeats and realleges each and every allegation contained in the foregoing paragraphs as if set forth fully herein.

37. Defendant, **LENOIR**, directly or indirectly, singly or in concert with others, in the offer and sale of securities, by use of the means and instruments of transportation and communication in interstate commerce and by use of the mails, have: (a) employed devices, schemes or artifices to defraud; (b) obtained money or property by means of untrue statements of material fact or omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in transactions, practices or courses of business which operate or would operate as a fraud or deceit.

38. As part of and in furtherance of this scheme, Defendant, **LENOIR**, directly and indirectly, prepared, disseminated or used contracts, written offering documents, promotional materials, investor and other correspondence, and oral presentations, which contained untrue statements of material fact and which omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

39. Defendant, **LENOIR**, made the referenced misrepresentations and omissions knowingly or grossly recklessly disregarding the truth.

40. For these reason, Plaintiff, **SMITH**, has been damaged, and is entitled to damages and other relief for Defendant's violation of Section 17(a) of the Securities Act as alleged herein.

### PLAINTIFF DEMANDS TRIAL BY JURY

**WHEREFORE**, Plaintiff, **EMMA MAE SMITH**, demands judgment against Defendant, **BOBBY LENOIR**, equitable relief and damages, as follows:

1. Compensatory damages in an amount to be sufficient to compensate Plaintiff for her loss.

2. Consequential damages in an amount to be determined at trial;

3. Disgorgement and restitution of all earning, profits, compensation and benefits received by Defendant, **LENOIR**, as a result of his unlawful acts and practices;

4. Costs and disbursements of the action;

5. Reasonable attorney's fees;

6. Punitive damages;

7. Such other further relief as this Court may deem just and proper.

            Respectfully submitted,

            EMMA MAE SMITH

            BY: _____
               Kenneth T. O'Cain

*Kenneth T. O'Cain (MSB # 101124)*
*C. R. Montgomery (MSB # 3413)*
Montgomery McGraw Collins & O'Cain, PLLC
P.O. Box 1039
3350 N. Liberty Street, Ste. A
Canton, MS 39046
Telephone: 601-859-3616
Facsimile: 601-859-3622
Email: Tocain@mmcolaw.com
Email: Crmontgomery@mmcolaw.com
*Attorneys for Plaintiff*